# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| ROBERT ANTHONY CELIA,<br><br>   Plaintiff,<br><br>vs.<br><br>NORTH CENTRAL CORRECTIONAL FACILITY, KENDRA WALKER, KATHY WEISS, and KENDRA KINNEY,<br><br>   Defendants. | No. C13-3003-MWB<br><br>*REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT* |

*TABLE OF CONTENTS*

*I. INTRODUCTION ................................................................ 2*

*II. RELEVANT FACTS ............................................................. 2*

*III. SUMMARY JUDGMENT STANDARDS ................................... 6*

*IV. ANALYSIS ......................................................................... 8*
  *A. Were Defendants Deliberately Indifferent to a Serious Medical Need? ................................................................ 8*
  *B. Are Celia's Claims Barred by 42 U.S.C. § 1997e(a)? ............ 14*
  *C. Are Defendants Entitled to Qualified Immunity? .................. 16*

*V. CONCLUSION AND RECOMMENDATION ............................. 18*

## I. INTRODUCTION

Plaintiff Robert Anthony Celia, an inmate in Iowa's state prison system, commenced this lawsuit on January 8, 2013. He then filed a *pro se* complaint on July 24, 2013. Celia alleges the named defendants were deliberately indifferent to serious medical needs regarding his injured ankle while he was an inmate at North Central Correctional Facility (NCCF) in Rockwell City, Iowa. He seeks compensation for pain and suffering, along with better medical policies for other inmates. The named defendants are the facility and certain individuals who were associated with the Iowa Department of Corrections (DOC) during the relevant period of time.

Defendants Kathy Weiss and Kendra Walker[1] filed an answer in which they deny Celia's claim. No party has demanded a jury trial. Defendants have now moved for summary judgment. Doc. No. 19. Celia has not filed a resistance. The Honorable Mark W. Bennett has referred the motion to me for the preparation of a report and recommended disposition. Doc. No. 20. No party has requested oral argument and, in any event, I find that oral argument is not necessary. *See* N.D. Ia. L.R. 7(c). The motion is fully submitted.

## II. RELEVANT FACTS

The following facts are undisputed for purposes of defendants' motion:

***The Parties.*** Celia was committed to the custody and care of the Iowa DOC on November 8, 2010. He was incarcerated at NCCF from December 22, 2010, through

---

[1] While the *pro se* complaint names four defendants, defendants Weiss and Walker are the only defendants who have been properly joined. Defendant Kendra Kinney is no longer employed by the Iowa DOC and was never served in this case. Doc. No. 12. Defendant North Central Correctional Facility is not a proper party to the action because "an agency exercising state power is not a 'person'" for purposes of 42 U.S.C. § 1983. *See, e.g., Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp.*, 948 F.2d 1084, 1086 (8th Cir. 1991) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). I will refer to Weiss and Walker collectively herein as "defendants."

March 14, 2011, and again from May 19, 2011, through March 14, 2012, when he was transferred to Des Moines, Iowa, for work release. His work release was subsequently revoked and he was then transferred to various facilities within the Iowa DOC. He is currently in the Newton Correctional Release Center. Weiss is the nursing supervisor at NCCF and Walker is a nurse at NCCF.

*Celia's Treatment History.* Celia underwent a physical exam on November 9, 2010, when he came into the custody of the DOC. The medical staff noted that Celia reported having a "bad right knee" but did not restrict Celia to a lower bunk, nor did they restrict his participation in work, sports or transportation. Doc. No. 19-3 at 10, 13.

On March 3, 2011, Celia reported that he injured his right ankle when he jumped off his top bunk. On that day, Nurse Kinney examined Celia's ankle and contacted Dr. Ed O'Brien (the on-call DOC doctor). Per Dr. O'Brien's orders, Kinney ordered ice, crutches, an ace wrap and extra pillows for Celia, restricted him to the lower bunk, and released him from work for several days. Celia was seen by other nursing staff for follow-up on March 4 and March 5 with complaints about his ankle. The staff advised him to comply with the treatment orders, such as keeping the foot elevated and using the provided ice packs.

On March 6, 2011, Walker saw Celia for the first time. She examined him and advised him to properly use the crutches, ace wrap, and brace; to take ibuprofen as prescribed; to elevate his foot; to treat his foot with ice and heat; and to avoid weight-bearing activities (as he had been previously instructed but had not followed). She also provided him with a second ace wrap and an ankle brace. *Id.* at 21. Walker saw Celia again the next day.

Celia was then seen by Dr. Tobin Jacks on March 8, 2011. Dr. Jacks ordered an x-ray at a local hospital, which was conducted on the following day and indicated a fracture of the right ankle. On March 14, Weiss contacted the on-call surgeon at the University of Iowa Hospitals and Clinics (UIHC) in Iowa City and transferred Celia to Iowa City for surgery.

3

The fracture was surgically repaired on March 15, 2011. Following discharge, Celia was transferred to the Iowa Medical and Classification Center in Oakdale, Iowa, until he could be medically cleared to return to NCCF. Dr. O'Brien prescribed crutches, an extra pillow and a wheelchair (for distance) on March 16. Dr. O'Brien had nurses keep a sleep log and document Celia's activities to ensure his pain was effectively managed from March 17 to 20. The results showed normal activity and sleep pattern.

Celia had follow-up visits with health services on March 22, 24 and 31 to discuss his recovery. At the March 24 visit, the nurse noted that Celia "ambulates in a wheelchair at all times" but otherwise completed tasks without difficulty and was only taking ibuprofen to control pain. *Id.* at 60. On April 1, doctors at UIHC removed Celia's cast and prescribed a short leg cast for 2-4 weeks. Dr. O'Brien reported that an examination on that date showed "the ankle was doing well [with] minimal ankle pain." *Id.* at 65. On April 13, Dr. Jacks reported that Celia was not complying with orders to use crutches at all times (rather than hopping about) and to only use the wheelchair for long distances. Doc. No. 19-3 at 72.

On April 29, 2011, Celia was again seen at UIHC, where his short cast was removed and replaced with a boot. Dr. Mendoza at UIHC recommended that Celia wean off crutches within 2-3 weeks. Dr. Mendoza reported that the ankle appeared to be healing well and did not look infected. During the examination, Celia requested that the syndesmosis screw in his right ankle be removed because he feared it would break due to his active lifestyle. The doctor agreed and scheduled the removal for two months out. On May 4, 2011, Celia fell while using crutches but reported no injuries at the time.

On July 20, 2011, Celia had a pre-operative evaluation before having the syndesmosis screw removed at UIHC. The evaluation noted that Celia reported he had been running since mid-June with no pain or difficulty but "fe[lt] that he limps a little bit with a jog." Doc. No. 19-3 at 93. Celia also noted some pinpoint numbness, some minor swelling after being on his feet, and some "pressure or irritation at the medial aspect of his ankle." *Id.* On August 8, 2011, Dr. Mendoza removed the syndesmosis

4

screw. Celia was then seen by health services at NCCF on August 10 for follow-up. The nurse practitioner noted minimal swelling and no drainage but Celia reported needing to take hydrocodone every four hours for pain relief. Doc. No. 19-3 at 104. Celia requested a renewal for the hydrocodone when his prescription ran out but his request was denied. *Id*. On August 17, Celia was again seen by health services and was scheduled to have his sutures removed with no restrictions.[2]

*__The Grievance Process.__* Celia alleges that he presented the facts relating to his complaint through the prisoner grievance procedure. Doc. No. 1 at 2. He claims to have spoken to the nurses at NCCF and that he "never got any thing [sic] back on the grievance [he] filed" despite waiting over eighty days. *Id.* However, the defendants contend he never filed the required grievance form regarding the care he received after his fall. Doc. No. 19-1, ¶ 12. The Grievance Coordinator for NCCF states, by affidavit, that "Celia never filed any grievance concerning his March 2011 right foot injury nor the medical care he received for the same." Doc. No. 19-3 at 122.

Celia commenced this case on January 8, 2013. Doc. No. 1. He brings his claim pursuant to 42 U.S.C. § 1983 and alleges that defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. His complaint alleges that given his knee problems, he should have been assigned a low bunk at NCCF, but was not, and that his knee gave out, causing him to twist his ankle in February 2011.[3] Doc. No. 6 at 6. Celia asserts that despite an alleged statement by Corrections Officer Kelly Goodman that Celia needed to go to the hospital because his ankle was likely broken, some amount of time (five days, according to the records) passed before Celia

---

[2] It is unclear from the record when the sutures were removed or who did the procedure. At Celia's visit to health services on August 10, the suture removal was scheduled for August 22 but at his August 17 visit, the nurse practitioner ordered the sutures to be removed the following day. Doc. No. 19-3 at 105, 107-08.

[3] While Celia alleges that this occurred in February 2011, the evidence (as summarized above) suggests that it actually occurred on March 3, 2011. The difference is not material to the merits of the pending motion.

5

was actually transported to a local hospital. He contends that a doctor then told him he needed emergency surgery or else he "would have arthritis in [his] ankle." *Id*. Celia alleges that he was not taken to Iowa City for surgery until eleven days later and, in the interim, was only given crutches and ice for treatment. He states that he fell down twice but was refused a wheelchair. He also states that he has lingering pain in his knee and ankle. He requests compensation for pain and suffering and "better medical policies for other inmates." *Id*.

### III. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment should be granted, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id*. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id*.

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods v. DaimlerChrysler*

*Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods,* 415 F.3d 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id*. However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis*, *Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## IV. ANALYSIS

Defendants raise three separate arguments:

    a.    There is no evidence that defendants were deliberately indifferent to a serious medical need.

    b.    Celia's claims are barred by 42 U.S.C. § 1997e(a).

    c.    Defendants are entitled to qualified immunity.

### A. *Were Defendants Deliberately Indifferent to a Serious Medical Need?*

Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's ban against cruel and unusual punishments. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Deliberate indifference to an inmate's serious medical needs can arise when prison doctors or guards "intentionally deny[] or delay[] access to medical care," *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), or when "medical care [is] so inappropriate as to evidence intentional maltreatment," *Fourte v. Faulkner County, Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (citation and internal quotation marks omitted). To prevail on such a claim, an inmate must show "that (1) the inmate suffered from an objectively serious medical need, and (2) the prison official knew of the need yet deliberately disregarded it." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)).

Under the first requirement, an objectively serious medical need is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (quoting *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991)). Under the second requirement, an official is deliberately indifferent "if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk*, 508 F.3d 868, 873 (8th Cir. 2007). "Deliberate indifference is equivalent to criminal-law recklessness, which is 'more blameworthy than negligence,' yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of

serious harm to the inmate." *Schaub*, 638 F.3d at 914-15 (quoting *Farmer*, 511 U.S. at 835, 839-40). Likewise, "mere disagreement with treatment decisions does not rise to the level of constitutional violation." *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)).

With regard to the first requirement, Celia alleges that the injury to his ankle constituted a serious medical need. The defendants do not dispute this allegation. Indeed, given that the defendants advised Celia to rest and elevate his ankle and provided ice, crutches and ace wraps after the injury initially occurred, it is clear they recognized that he had a serious medical need. Doc. No. 19-3 at 13-20. This is further supported by the doctor's finding that Celia had a fractured right ankle that required additional treatment. Doc. No. 19-3 at 24. Celia has established the first requirement of a deliberate indifference claim.

To establish the second, subjective requirement, Celia must present evidence supporting a finding that the defendants "acted with a sufficiently culpable state of mind, namely, that they actually knew of, but deliberately disregarded [his] medical needs." *Krout v. Goemmer*, 583 F.3d 557, 567 (8th Cir. 2009) (internal citations and quotation marks omitted). The evidence must show "that the officers recognized that a substantial risk of harm existed *and* knew that their conduct was inappropriate in light of that risk." *Id*. (emphasis in original). To put it another way, deliberate indifference occurs when an official "knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Schaub*, 638 F.3d at 916 (citing *Farmer*, 511 U.S. at 847).

Celia alleges that the defendants acted recklessly in response to his serious medical need by treating his ankle injury with ice, rest, crutches, extra pillows, ace bands and a brace for five days before having an x-ray taken, and then waiting an additional six days before referring him to UIHC for surgery. Celia states that the doctor who took the x-ray recommended emergency surgery to avoid developing arthritis in his ankle and alleges

he has lingering pain in that ankle despite treatment.[4] Defendants argue that Celia's complaints amount to a disagreement in course of treatment, which is insufficient to establish a constitutional violation. *See Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994). They further contend that there is no evidence that they improperly or untimely treated Celia's injury as to constitute deliberate indifference. Doc. No. 19-2 at 7.

Generally speaking, "'a prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment'" is not actionable as deliberate indifference. *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (quoting *Taylor v. Bowers*, 966 F.2d 417, 421 (8th Cir. 1992)). Thus, as noted in *Estelle v. Gamble*, a medical decision to forego an x-ray or other diagnostic test without more does not rise to level of an Eighth Amendment violation. *Estelle*, 429 U.S. at 107. Yet, "[g]rossly incompetent or inadequate care" or a physician's "decision to take an easier and less efficacious course of treatment" can indicate deliberate indifference. *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010).

On this record, the defendants' treatment of Celia was not so "grossly inadequate" as to constitute deliberate indifference. Immediately following his fall, Celia was examined and treated with ice, an ace wrap, pillows and crutches. There is no indication that the fracture was visually apparent, such that an initial, conservative course of treatment would be clearly inadequate. Celia was then examined by health services each day for the next four days. While he complained of pain and restricted motion, the records indicate that he was not complying with health services' orders, which the defendants could reasonably conclude was exacerbating a simple sprain. *See* Doc. No

---

[4] Although the record includes treatment notes from UIHC, it contains no notes from the providers at Loring Hospital who took the x-ray and recommended referral for surgery. The DOC Health Services notes reflect that Celia was seen by Dr. Meyer, who intended to call Weiss to discuss referring Celia for surgery, and that in the interim Celia should continue to use an air splint and crutches and to not bear weight on his right ankle. Doc. No. 19-3 at 24. There is no record of when Dr. Meyer actually called Weiss. However, Weiss contacted UIHC on March 14, 2011. Doc. No. 19-3 at 25.

19-3 at 20-21. This is corroborated by Walker's treatment notes, which indicate that the swelling in Celia's leg diminished the day after she instructed him to comply with treatment guidelines. Doc. No 19-3 at 21-22.

The record here is far different from that in a somewhat-similar case, *Walker v. Campbell*, No. 2:12CV00026 ERW, 2013 WL 6007623 (E.D. Mo. Nov. 13, 2013). In *Walker,* an inmate suffered an ankle fracture after jumping from his bunk. He was not x-rayed for five days and was then forced to wait an additional eight days before surgery. In resisting the defendants' motion for summary judgment, the plaintiff submitted affidavits from other inmates detailing the level of pain he was experiencing and that his ankle was visibly deformed ("dangling" and "just hung there"). *Id*. at *2. Based on this evidence, the court held that the defendants were not entitled to summary judgment on plaintiff's deliberate indifference claim:

> Viewing the record in the light most favorable to Plaintiff, this evidence creates a genuine dispute of material fact as to whether Plaintiff suffered and continues to suffer medical conditions obvious to a layperson. Thus, Defendants have not met their burden in establishing Plaintiff lacked a medical need obvious to a layperson . . . .

*Id*. at *6. The court later stated:

> Thus, the Court concludes Plaintiff has sufficiently alleged more than mere negligence. "[I]t is commonly known that an obviously fractured limb requires immobilization and stabilization, particularly before a person is moved, and that failure to splint or otherwise immobilize a fractured limb puts the injured person at risk for further injury and increased pain." *Croft v. Hampton*, 286 Fed. Appx. 955, 956 (8th Cir. 2008). Given the genuine dispute of fact as to whether Plaintiff's foot "was dangling" and "just hung there," the Court cannot agree that the provision of an Ace wrap, crutches, aspirin, and an ice bag conclusively constituted "reasonable measures."

*Id*. at *9.

Here, by contrast, Celia has submitted no evidence indicating that his ankle was obviously fractured, such that even a layperson would have recognized that it was not merely sprained. The fact that his ankle turned out to be fractured does not, in hindsight,

11

turn a misdiagnosis into deliberate indifference. *See, e.g., Schaub*, 638 F.3d at 915 ("Deliberate indifference must be measured by the official's knowledge at the time in question, not by 'hindsight's perfect vision.'") (quoting *Lenz v. Wade*, 490 F.3d 991, 993 n. 1 (8th Cir. 2007)). The defendants did not refuse to provide care and, indeed, medical staff scheduled daily follow-up visits to examine Celia's injury. Doc. No. 19-3 at 19. As a matter of law, Celia has not demonstrated that the course of treatment initially provided by the defendants was so inadequate, or Celia's injury so obvious, to support the subjective requirement of a deliberate indifference claim.

Likewise, although delay in acquiring treatment can constitute deliberate indifference, the facts here do not rise to that level. "The Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin*, 557 F.3d 628, 633 (8th Cir. 2009). The Eighth Circuit Court of Appeals has been more likely to find delay constituted deliberate indifference for life-threatening ailments. *Compare Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (finding one month delay from nurse's tentative diagnosis of fractured finger to getting an x-ray without more, was merely negligent and not deliberate indifference) *with Plemmons v. Roberts*, 439 F.3d 818, 824 (8th Cir. 2006) (finding fifty-minute delay in calling ambulance for inmate suffering from heart-attack like symptoms could constitute deliberate indifference). The court has also considered the length of the delay, severity of the condition, and prison officials' knowledge of condition. *See Johnson v. Bowers*, 884 F.2d 1053, 1056 (8th Cir. 1989) (finding nine-year delay after original recommendation of surgery exhibits deliberate indifference); *Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) (finding a three-week delay in referring inmate with impacted and infected tooth to oral surgeon when officials were aware of inmate's suffering could constitute deliberate indifference). Moreover, for deliberate indifference claims, inmates who "alleg[e] a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that [these] delays adversely affected his prognosis." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (internal quotation

marks omitted). The Court has only excused presenting verifying medical evidence when the "need for medical attention . . . would have been obvious to a layperson." *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004).

Although there was an eleven-day delay between Celia's injury and the surgical repair, that delay did not constitute deliberate indifference. Celia has presented no verifying medical evidence that the prison officials ignored an escalating situation or that the delay impacted his outcome. Following the x-ray on March 9, there is no record or claim that Celia requested to be seen by health services again for his ankle injury before he was referred for surgery on March 14, which might have shown an escalating situation. Despite Celia's allegation that the referring doctor recommended emergency surgery, there is nothing in the record to support that claim, or to show that a six-day delay in referral was improper or contrary to the doctor's orders.

Nor has Celia provided evidence that the lingering pain he alleges is a result of improper treatment due to delay. He is not excused from presenting verifying medical evidence because the severity of his injury and detrimental effect of delay would not be immediately obvious to a layperson. *Compare Walker*, 2013 WL 6007623, at *6 (finding fellow inmates' affidavits of plaintiff's pain and visible ankle deformity supported allegation that injury was obvious to layperson and thus, no verifying evidence of effect of delay was needed). Celia simply has not demonstrated that the defendants actually knew of and disregarded a substantial risk of serious harm to his health or safety. *Farmer*, 511 U.S. at 844.

Based on this record, Celia has not demonstrated a genuine issue of material fact as to whether the defendants were deliberately indifferent to a serious medical need – either in regard to the treatment provided or its timing. As such, I recommend entry of judgment in favor of the defendants as a matter of law. While this recommendation, if adopted, would dispose of the entire case, I will address the defendants' alternative summary judgment arguments.

### B. Are Celia's Claims Barred by 42 U.S.C. § 1997e(a)?

Section 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion under 42 U.S.C. 1997e requires "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 91 (2006). If a claim is not exhausted prior to filing in federal court, the district court must dismiss it. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003).

Defendants argue that Celia failed to exhaust his administrative remedies because he did not follow the proper grievance procedure for his complaints. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements . . . that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). The Eighth Circuit has only excused inmates from complying with grievance procedures when "officials have prevented prisoners from utilizing the procedures, . . . or when officials themselves have failed to comply with the grievance procedures." *Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005).

The grievance policy of the Iowa DOC at the relevant time required inmates to attempt an informal resolution of the grievance before filing a written grievance. The inmate was next required to file a grievance complaint using a form. Only one issue could be raised per form. Within seven days, the grievance officer would notify the inmate of receipt of the grievance and the process to be used (standard, emergency, non-grievable or other). Within 21 days of receiving the grievance, the grievance officer would provide a written response and recommendation or otherwise notify the inmate that the investigation was continuing. If the inmate wished to appeal that decision, he was required to complete a form. This appeal form had to be received by the

warden/superintendent within 15 days of the grievance officer's response. The warden/superintendent would respond in writing within 15 days. If the inmate was still not satisfied with the response, he then had to submit an appeal form to the regional deputy director. The form had to be received within 15 days of the warden/superintendent's response. The regional deputy director would then respond within 30 days, which constituted the final appeal step. Doc. No. 19-3 at 148-53.

Defendants contend Celia did not fully exhaust the proper grievance procedure. Celia states on his complaint form that he spoke to the nurses at the time, which when viewing the evidence in the light most favorable to him would constitute an attempt at informal resolution. However, there is no evidence that the other requirements of the grievance procedure were met, despite Celia's statement in his complaint that he had filed a grievance regarding the medical treatment but had not received a reply. Celia did not file a resistance to the motion for summary judgment or provide evidence to counter defendants' evidence that he did not submit a written grievance regarding the March 2011 injury, or the care he subsequently received.

Although prisoners are "not required to specially plead or demonstrate exhaustion in their complaints," *Jones*, 549 U.S. at 216, "'[t]o survive summary judgment, a plaintiff must substantiate his allegations with enough probative evidence to support a finding in his favor.'" *Jenkins*, 557 F.3d at 631. Because the undisputed evidence shows that Celia did not comply with the required grievance procedures, Celia has not met his burden to establish that a genuine issue of material fact exists on this issue.[5] As such, and as an alternative ground, I recommend entry of summary judgment in favor of the defendants based on 42 U.S.C. § 1997e(a).

---

[5] Nor has Celia produced evidence indicating that he was prevented by prison officials from filing a grievance or that the prison officials themselves failed to comply. *See Gibson*, 431 F.3d at 341.

15

## C. Are Defendants Entitled to Qualified Immunity?

Defendants argue that Celia's claim must be dismissed because they are entitled to qualified immunity. Qualified immunity protects public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine balances (a) the need to hold public officials accountable when they exercise power irresponsibly with (b) the need to shield officials from harassment, distraction and liability when they perform their duties reasonably. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Scott v. Baldwin*, 720 F.3d 1034, 1035 (8th Cir. 2013) (citation and internal quotation marks omitted).

Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). The analysis consists of two inquiries:

1. Do the facts alleged or shown make out a violation of a constitutional right?

2. Was that right clearly established (from the perspective of a reasonable official in the defendant's position) at the time of the alleged conduct?

*Pearson,* 555 U.S. at 232; *see also Irving v. Dormire,* 519 F.3d 441, 446 (8th Cir. 2008). A public official is entitled to qualified immunity unless the answer to both questions is "yes." *Pearson,* 555 U.S. at 232. While federal courts were once required to address these two inquiries sequentially, they are now "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. Thus, when appropriate, a court may skip the first inquiry and find that qualified

immunity exists based on a finding that the alleged constitutional right was not "clearly established" at the time of the alleged conduct. *Id.*

I have already determined that Celia has failed to demonstrate a genuine issue of material fact as to whether defendants were deliberately indifferent to a serious medical need. Even if defendants had been deliberately indifferent in violation of the Eighth Amendment, Celia would still have to show that the alleged right he is claiming was clearly established at the time of the alleged conduct. Whether a right is "'clearly established' is a question of law for the court to decide." *Rohrbough v. Hall*, 586 F.3d 582, 586 (8th Cir. 2009). "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Gordon ex rel Gordon v. Frank*, 454 F.3d 858, 863 (8th Cir. 2006) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). The relevant question "is whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Rohrbough*, 586 F.3d at 586 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

Celia has a clearly-established constitutional right to be free from cruel and unusual punishment under the Eighth Amendment, including the right to receive medical treatment. *See McRaven v. Sanders*, 577 F.3d 974, 980 (8th. Cir. 2009) (citing *Estelle*, 429 U.S. at 104). However, qualified immunity will not apply only if it would have been clear to a reasonable officer that the actions or inactions Celia complains of were unlawful under the circumstances. This does not necessarily mean that the precise actions had to have been declared unlawful by prior court decisions. *See, e.g., Atkinson v. City of Mountain View*, 709 F.3d 1201, 1212 (8th Cir. 2013) (citing *Vaughn v. Ruoff*, 253 F.3d 1124, 1129 (8th Cir. 2001)). It does mean, however, that prior decisions must have provided "fair warning" that the actions were unconstitutional. *Id.* (citing *Meloy v. Bachmeier*, 302 F.3d 845, 848 (8th Cir. 2002)).

Celia claims that he had a right to receive a more-immediate x-ray and referral for surgery. The Eighth Circuit Court of Appeals has consistently held that "nothing in the

Eighth Amendment prevents prison doctors from exercising their independent medical judgment." *See e.g., Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). There was not "fair warning" in prior case law that the treatment Celia received and delays he encountered were unlawful. Even if the defendants were negligent (which is not apparent on this record), mere negligence does not constitute a constitutional violation. *See Hartsfield*, 491 F.3d at 398; *Hamilton*, 452 F.3d at 973; *Fourte*, 746 F.3d at 390. Celia's alleged right to an immediate x-ray and prompt referral for surgery was not, under the circumstances present here, so clearly established that a reasonable officer would know he or she was acting unlawfully by failing to act sooner. *See Davis*, 375 F.3d at 712 ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.").

Celia's claim fails both prongs of the qualified immunity analysis. This provides yet another alternative basis for me to recommend that defendants' motion for summary judgment be granted.

## V.  CONCLUSION AND RECOMMENDATION

For the reasons discussed above, I RESPECTFULLY RECOMMEND that the defendants' motion for summary judgment (Doc. No. 19) be **granted**, that this case be **dismissed with prejudice** and that **judgment be entered** in favor of the defendants and against the plaintiff.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal

18

from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 13th day of June, 2014.

                                                  _____
                                                  LEONARD T. STRAND
                                                  UNITED STATES MAGISTRATE JUDGE